

**FILED**
APR 5 - 2022
Clerk, U.S. District and
Bankruptcy Courts

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No: 21-CR-162 |
| | : | |
| v. | : | 18 U.S.C. § 1752(a)(1) |
| | : | 40 U.S.C. § 5104(e)(2)(D) |
| TERRY LYNN LINDSEY, | : | 40 U.S.C. § 5104(e)(2)(G) |
| | : | |
| Defendant. | : | |
| | : | |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and Terry Lynn Lindsey ("the defendant" or "Lindsey"), with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States

1

Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the

crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

*Terry Lindsey's Participation in the January 6, 2021, Capitol Riot*

8.      Prior to January 6, 2021, Glenn Wes Lee Croy ("Wes Croy") and his girlfriend, Jennifer Horvath, picked up defendant Terry Lynn Lindsey in Piqua, Ohio and they drove together to Washington D.C. to attend a political rally on January 6, 2021. On that morning, Lindsey, Wes Croy, and Jennifer Horvath went to a political rally at the Ellipse on the National Mall. Following the rally, the defendant, Wes Croy, and Jennifer Horvath walked with a crowd to the U.S. Capitol Grounds.

9.      The defendant, Wes Croy, and Jennifer Horvath stood on the West Lawn part of the U.S. Capitol Grounds, a restricted area, for approximately one hour as law enforcement officers engaged with them and other rioters and deployed tear gas.

10.     At approximately 2:00 p.m., the defendant and Wes Croy joined other individuals on the West Lawn who surrounded a group of Metropolitan Police Department Officers, attempted to prevent

their access to the U.S. Capitol Building, and yelled at the officers. The rioters, including Lindsey, accused the officers of being "oathbreakers" and implored the officers to retreat.

11.     At approximately 2:11 p.m., the defendant climbed through metal scaffolding to get from the West Lawn to the Upper West Terrace area of the U.S. Capitol Grounds.

12.     The defendant, Wes Croy, and Jennifer Horvath then entered the U.S. Capitol Building at approximately 2:18 p.m. through the Senate Wing Door. The defendant later told family members that they "stormed the Capitol" and that the "cops let us in after they realized that they could not stop it."

13.     As they entered, Lindsey joined the crowd chanting, "Whose House? Our House." From there, Lindsey, Croy, and Horvath walked into the Crypt and joined the crowd as it overwhelmed United States Capitol Police officers who were attempting to prevent the rioters from entering further into the U.S. Capitol Building.

14.     While inside the U.S. Capitol Building, Jennifer Horvath took a picture of the defendant and Wes Croy in front of a bust of Abraham Lincoln entitled, "Lincoln the Legislator," which they later distributed widely to others. After being told to leave by United States Capitol Police Officers, Croy, Horvath, and Lindsey exited the U.S. Capitol Building at approximately 2:37 p.m. through the Memorial Door after being inside the U.S. Capitol Building for approximately 20 minutes.

15.     Once outside the U.S. Capitol Building, the defendant, Wes Croy, and Jennifer Horvath remained on the grounds of the U.S. Capitol Building for approximately 40 to 45 minutes.

16.     At approximately 3:21 p.m., the defendant, Wes Croy, and Jennifer Horvath re-entered the U.S. Capitol Building through the Rotunda doors. Lindsey then evaded a group of Metropolitan Police Department and United States Capitol Police officers who were attempting to clear the hallway outside the Rotunda and prevent rioters from re-entering the Rotunda. Lindsey, Croy, and Horvath then entered the Rotunda before being forced to exit the U.S. Capitol Building again through the Memorial Door at approximately 3:29 p.m.

### *Elements of the Offense*

17. Terry Lynn Lindsey knowingly and voluntarily admits to all of the elements of Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1); Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). Specifically, the defendant admits that:

a. With respect to the violation of 18 U.S.C. § 1752(a)(1), the defendant knowingly entered and remained in the U.S. Capitol Building, a restricted building, without lawful authority to do so;

b. With respect to the violation of 40 U.S.C. § 5104(e)(2)(D), the defendant willfully and knowingly entered the U.S. Capitol Building knowing that he did not have permission to do so. Defendant further admits that while inside the Capitol, defendant willfully and knowingly uttered loud, threatening, or abusive language, or engaged in disorderly and disruptive conduct, with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress; and,

c. With respect to the violation of 40 U.S.C. § 5104(e)(2)(G), the defendant willfully and knowingly entered the U.S. Capitol Building knowing that he did not have permission to do so. Defendant further admits that while inside the Capitol, defendant willfully and knowingly paraded, demonstrated, or picketed.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: JORDAN KONIG
Digitally signed by JORDAN KONIG
Date: 2022.03.29 10:06:49 -04'00'

Jordan A. Konig
Trial Attorney, Department of Justice
Detailed to the U.S. Attorney's Office

Case 1:21-cr-00162-BAH   Document 85   Filed 04/05/22   Page 6 of 6

## DEFENDANT'S ACKNOWLEDGMENT

I, Terry L. Lindsey, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 30 March 2022

TERRY L. LINDSEY
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 3/30/22

RICHARD S. STERN
Attorney for Defendant